### In re TOWER BLDG. CORPORATION.

### DAVIS et al. v. TOWER BLDG. CORPORATION et al.

### Nos. 5901, 5995.

Circuit Court of Appeals, Seventh Circuit.

Feb. 23, 1937.

Don Kenneth Jones, John M. Baker, and Ernest F. Staub, all of Chicago, Ill., for appellants.

Walter A. Wade and Joseph Edelman, both of Chicago, Ill., for appellees.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

Shortly after the passage in 1934 of the amendment to the Bankruptcy Act known as section 77B (11 U.S.C.A. § 207), a proceeding for reorganization was filed in the District Court. That matter has progressed to a decree confirming a plan for reorganization. In the course of the proceedings, appellants, constituting a bondholders' committee, filed their petition for allowance for compensation and expenses under subsection (c), paragraph (9), 11 U.S.C.A. § 207 (c) (9), which reads, in part, as follows: "The judge * * * (9) may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, re-

organization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor."

They asked for reimbursement for out-of-pocket expenses, $1,720.89; for services of depositaries, $4,070.50; for secretarial services, $15,062.49; and as compensation for their members, $5085.35—a total of $25,939.23. The court allowed the first of these items in full, and for services of depositaries $3,140; of the secretary $4,800; and of the members of the committee $2,610.27. After so ordering, however, the court found that the amount of the compensation paid the committee by the debtor, some four years prior to the institution of the 77B proceedings exceeded by $2,903.21 the allowances made by the court, and directed appellants to recover the deficiency from the Chicago Title & Trust Company, which had been depositary and agent for the committee and, as such, had received the sums previously paid.

From this order the appeal is taken, appellants insisting that the sums allowed were unreasonably low and that the court was without jurisdiction to offset against them the sums previously paid the committee.

The committee was organized on December 12, 1929, and its earlier services were rendered in the year 1930. The debtor failed to pay the semiannual interest upon a bond issue aggregating more than $1,300,000, due on January 1, 1930. Thereupon the committee called for deposit of bonds in order that concerted action might be taken to protect the investment. No court proceedings were pending, and the committee, in the course of a few months, succeeded in negotiating a socalled plan of reinstatement, which contemplated the remission of the then existing default and the extension of the time of maturity of certain of the bonds. This voluntary plan, assented to by the debtor, was submitted to the bondholders and on March 20, 1930, had been accepted by a great majority of them. Thereafter the debtor attempted to carry out the plan, resumed payment of interest paying, from time to time, five semiannual installments, in accordance with the written extension agreement then entered into. On December 5, 1930, the debtor, under the provisions of the plan, paid to the committee $19,980, of which there was paid to its attorneys, for fees and disbursements, $6,526.72; to its depositaries, $8,755.50; to the

secretary, $2,087.51; to the committee members, for compensation, $2,610.27. Thus, it will be seen, in December, 1930, the parties, by voluntary agreement, effected a plan for reinstatement and extension; the debtor of its free will and accord paying the bondholders' committee the said amounts for compensation and expenses. The transaction was then completed and the debtor continued in possession of its property.

Some two years later, on January 1, 1932, the debtor defaulted in the payment of further interest as provided in the plan of reinstatement. It reported that it found itself unable to make further payments, as it had agreed to do under the plan. The committee thereupon procured foreclosure proceedings of the trust deed; a receiver was appointed and took possession of the property. In 1934 the proceedings under section 77B were instituted; the proceedings in the state court were still pending; no sale had taken place. Thereupon, the committee intervened in the reorganization proceedings and participated in the promotion of a plan thereafter accepted by a majority of the parties in interest and approved by the court.

■ The allowances in pursuance of the subsection above quoted were made in the exercise of discretion by the District Judge, and unless there has been an abuse of such discretion or an erroneous application of the law, we should not interfere. In re National Lock Company (C.C.A.) 82 F.(2d) 600. The fixing of the value of administrative services is peculiarly one calling for the exercise of judicial discretion by the court charged by the law with the duties of administration of the assets. The court, under the statute, must determine, if any services have been rendered which have been of benefit to the estate, which have contributed to the promotion of the purposes of the legislation, the promulgation and adoption of a feasible plan of reorganization. This, apparently, the District Court did. The character, extent, and beneficial value of the services rendered by the committee in the promotion of the plan and its adoption were peculiarly within its knowledge. The parties were acting directly under its supervision and we must assume, in the absence of proof otherwise, that its knowledge of the character of the services, their value, and to what extent they were beneficial within the intent of the statute, were the bases for the allowances made. We shall not interfere.

■ However, a further question arises as to the propriety of the order in setting off against the allowances the payments made in 1930 under the voluntary agreement between the parties almost four years before the institution of 77B proceedings. We are unable to appreciate any sound basis for jurisdiction in the District Court thus to nullify and set aside a voluntary transaction between private parties dealing at arm's length and as adversaries. That subject-matter, in our opinion, was not before the court, and it could not in a reorganization proceedings go back of a binding agreement between the parties preceding by years enactment of the legislation and the filing of the petition and thus put at naught the voluntary contract and action of the parties. We are not called upon to determine how far Congress may go under the bankruptcy power in examining completed transactions between the debtor and its creditors occurring prior to the acquisition of jurisdiction. It is sufficient to remark that we find nothing in the act attempting thus to extend the jurisdiction of the court over the subject matter, under the guise of jurisdiction over insolvent estates.

What is said in this respect, however, shall not be considered as condonation upon our part, in any way whatever, of any alleged breach of fiduciary relationships. Such conduct, abhorrent to any court of equity, when properly made to appear in a controversy within our jurisdiction, will receive the consideration and treatment deserved.

It is urged by an intervening bondholder that fraud and collusion were perpetrated on the bondholders by the members of the committee, precluding them from receiving any fees, and certain evidence, taken upon another branch of the case, is included by stipulation of the parties as an additional statement with reservations of objections as to its relevancy. This has to do with the propriety of counsel for the receiver acting likewise for the receiver's tenant. It is argued that such counsel could not fully or properly perform his duties to either client. The record indicates that such evidence was not presented to or called to the attention of the district judge upon the hearing as to fees and we doubt our right to consider it. It appears from the order confirming the plan that the court provided that nothing contained therein should be deemed to impair, release, or affect in anyway any existing claims against

the receiver on account of any of his acts, deeds, omissions, or negligence. The court simultaneously appointed special counsel to investigate and advise the court as to whether any cause of action exists against the receiver by reason of his management of the property. Thus, it appears that this issue, the court properly conceived, should be the subject matter of a special investigation, with resulting litigation, if as a result same should be deemed feasible or advisable. We shall assume that such special counsel will properly discharge his duties in investigation and advice to the court. At this stage of the proceedings, the merits of that controversy are not before us. Whether any misconduct has occurred in this respect remains to be decided. If it shall be found to exist and if it then appears that the committee participated therein and so acted as to cause injury to the estate, the District Court shall be at liberty to reconsider the allowances in the light of such showing.

That part of the order granting allowances is affirmed, without prejudice to reconsider the same in the light of additional proper evidence. That portion of the order directing the same to be set off against payments made under the voluntary agreement is reversed. The cause is remanded for proceedings in conformity with this opinion.