## SULLIVAN & CROMWELL v. COLORADO FUEL & IRON CO. et al.

### BROWN et al. v. SAME.

### Nos. 1582, 1583.

Circuit Court of Appeals, Tenth Circuit.

April 13, 1938.

220

William V. Hodges, of Denver, Colo. (Henry C. Vidal and James L. Goree, both of Denver, Colo., and Sullivan & Cromwell, of New York City, on the brief), ·for appellants.

Fred Farrar and M. B. Holt, Jr., both of Denver, Colo., for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

These appeals are from an order made in a proceeding under section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, (1) disallowing the claim of a bondholders' protective committee for services, and (2) making an allowance to counsel for the committee.

The Colorado Fuel & Iron Company, a corporation engaged in the production of coal and iron ore, and in the manufacture of steel and iron products at its plant in Pueblo, Colorado, executed an issue of bonds, hereinafter called fuel bonds, dated February 1, 1893, and due February 1, 1943. They were secured by.

a mortgage or deed of trust covering substantially all of the properties then owned by the corporation, and supplemented by certain additional properties subsequently acquired. The Colorado Industrial Company, a wholly owned subsidiary of the Colorado Fuel & Iron Company, executed an issue of bonds, hereinafter called industrial bonds, dated August 1, 1904, and due August 1, 1934, which the Colorado Fuel & Iron Company subsequently assumed as to principal and interest. They were secured by a mortgage or deed of trust on properties which included the properties subject to the first lien of the fuel bonds. The relationship between the securities back of these two issues of bonds was that the fuel bonds constituted a first lien on a part of the structures and equipment of the steel plant of the company, and on large portions of its mining properties; and the industrial bonds constituted a first lien on the other part of the structures and equipment at the plant and on other mining properties, and in addition a second lien on the properties covered by the fuel bonds. Default was made in payment of the semiannual interest due on both issues on August 1, 1933. On the same day foreclosure proceedings were instituted in the United States Court in Colorado and a receiver was appointed for the properties and assets of the Colorado Fuel & Iron Company; and at the same time, ancillary proceedings in receivership were instituted in the United States Court in Wyoming. On August 1, 1934, the Colorado Fuel & Iron Company and the Colorado Industrial Company filed separate petitions seeking reorganization under section 77B; and the two proceedings were immediately consolidated. A plan of reorganization proposed by the debtors was approved in April, 1936, and it was subsequently completed.

A bondholders' protective committee formed to represent the holders of fuel bonds filed its petition for the allowance of $10,000 for services, $1,732.54 representing expenses incurred, and $500 for services of the secretary to the committee. Sullivan & Cromwell, a firm of attorneys in New York City, filed a petition for the allowance of $12,000 for services as counsel to the bondholders' committee, and $524.99 representing expenses incurred. Other claims were filed, all aggregating more than $500,000. The court referred all claims to a master with directions to take proof, and to submit a transcript of the evidence to the court with the opinion of the master concerning the amounts to be allowed. The master recommended among other things that the bondholders' committee be allowed $5,000 for services; that it be reimbursed for its expenses; and that the secretary be allowed $500 for his services. He further recommended that Sullivan & Cromwell be allowed $7,500 for their services; that they be reimbursed for their expenses; and that William V. Hodges, an attorney in Denver associated with them in the matter, be allowed $1,200 for his services. Exceptions were directed to the report, and on review the court made certain changes. The claim of the bondholders' committee was disallowed; but the committee was reimbursed for its expenses, and the secretary was allowed $500 for his services. Sullivan & Cromwell were allowed $2,500 for their services and $129.70 for expenses; and William V. Hodges was allowed $1,200 as recommended. The committee and Cromwell & Sullivan perfected separate appeals.

Subsection (9) of paragraph (c) of section 77B, as amended, 11 U.S.C.A. § 207(c) (9), provides that the court may allow reasonable compensation for services rendered and reimbursement for actual and necessary expenses incurred in connection with the proceedings and the plan, by officers, parties in interest, depositaries, reorganization managers and committees, or other representatives of creditors or stockholders, and the attorneys or agent of any of them and of the debtor. The statute is broad in scope and does not limit the compensation authorized by its terms to services rendered after the institution of the reorganization proceeding. It is common knowledge that the affairs of a debtridden corporation are sometimes so complicated that skill, patience, and extended consideration of many factors covering a·long period of time are required to effect a fair and equitable plan of reorganization. It frequently is feasible and expedient to work out the plan before the proceeding is filed; and compensation may be awarded for services rendered before as well as those rendered after the proceeding is actually instituted if they had a direct and proximate relation to the formation of the plan, were valuable, and were in the interest of the

222

debtor. In re National Lock Co., 7 Cir., 82 F.2d 600; In re Tudor Gables Building Corp., 7 Cir., 83 F.2d 871; In re Memphis Street Ry. Co., 6 Cir., 86 F.2d 891.

 But the act lodges a broad discretion in the chancellor in the fixing and allowance of fees and compensation. That discretion is to be exercised with sound judgment for the dual purpose of doing justice to the distressed debtor and of rewarding with reasonable compensation those who render faithful and necessary service. In re A. Herz, Inc., 7 Cir., 81 F.2d 511; Teasdale v. Sefton Nat. Fibre Can Co., 8 Cir., 85 F.2d 379, 107 A.L.R. 531; In re Memphis Street Ry. Co., supra; In re Tower Bldg. Corp., 7 Cir., 88 F.2d 347; In re Starrett Corp., 3 Cir., 92 F.2d 375. In the exercise of its sound discretion, the court should exert care to see that a reorganization proceeding is not diverted into a proceeding for the benefit of those claiming compensation for services rendered in connection with it to the disregard and detriment of the · debtor. And where the court has exercised its judgment respecting allowances, the action should not be disturbed on appeal unless· there has been a clear abuse of discretion.

The firm of J. & W. Seligman & Company acted as reorganization managers in this proceeding. Three separate and distinct protective committees functioned during the equity receivership and throughout the proceeding for reorganization. One represented owners of fuel bonds, one owners of industrial bonds, and one owners of preferred and common stock. The committee for the fuel bonds was formed in June, 1933, when it became apparent that the company would default in the interest due on fuel bonds on August first, and it retained Sullivan & Cromwell soon thereafter. No call was made for deposit of the bonds, but the committee conducted much correspondence with owners of bonds and others. The engineering firm of Coverdale & Colpitts had made a report on the properties of the company in 1930. About the time the bill in the equity receivership was filed the committee for fuel bonds and the committee for industrial bonds employed that firm to make a report bringing its earlier report to date in the aspects that would be material in effecting a reorganization. The report was made, and it disclosed that the fuel bonds were adequately secured; that the value of the properties pledged to secure them was about three times the amount of the bonds; that the industrial bonds were not adequately secured; that the value of the properties pledged to secure them was less than the amount of the bonds; and that by reason of these facts the owners of fuel bonds would occupy a safe position in any proceedings which might take place. That position of security was ascertained before the petitions were filed in this proceeding, and the committee asserted it throughout. The committee and its counsel did not participate actively in the preparation of any of the proposed plans of reorganization. They insisted that the fuel bonds must be given· that undisturbed position in any plan to be adopted. The earlier proposed plans did not accord them that position, but the one finally approved did. The court found that the reorganization managers carried the laboring oar in the proceeding, and that in the main the plan was their work; that without consulting the court, they had caused a complicated and unnecessary organization to be set up; that at their request committees representing the different classes of securities were created; that each committee retained separate counsel and accountants, and consulted engineers; that there was considerable duplication and overlapping of work and effort on the part of the managers, committees, attorneys, accountants, and engineers which generally justified the reduced allowances recommended by the master; that the available data and appraisals made it clear to the committee for fuel bonds at the outset that the security back of such bonds was worth more than two for one; that the committee took the position that it had no interest in the reorganization and that all parties acquiesced; that whatever contribution the committee made to the reorganization was chiefly through its engineers and attorneys; and that after all parties agreed that the fuel bonds should be given that undisturbed position in any plan of reorganization all that was required of the committee and its counsel, other than its local counsel appearing and consulting with the court, was a watchful waiting policy.

 In addition to the evidence submitted in connection with the claims, the

trial court was thoroughly familiar with the record in the equity receivership and in the reorganization proceeding. It cannot be said that in these circumstances the court abused its sound judicial discretion in disallowing the claim of the committee, and in making the allowance to counsel even though the record is persuasive that as an original proposition a different conclusion would have sustainable basis.

The order is affirmed.

PHILLIPS, Circuit Judge (dissenting).

It is true that the fuel bonds were adequately secured. However, they covered only a portion of the plant; hence foreclosure would dismember the plant and disrupt the business and was not desirable and reorganization was necessary for the protection of the fuel bonds.

The largest single block of the fuel bonds, approximately 10 per cent, was owned by the same interests which owned 65 per cent of the industrial bonds and large amounts of the preferred and common stock. The remaining 90 per cent of the fuel bonds were widely scattered. Hence, an independent committee to represent the fuel bonds was necessary. The appellant committee was formed consisting of Mr. Brown, senior partner of the firm of Brown Brothers, Harriman & Co., Mr. Kountze, president of the Colorado National Bank of Denver, Mr. Mabon, a member of the New York Stock Exchange firm of Mabon & Co., and Mr. Traphagen, president of the Bank of New York and Trust Company.

The appellant committee did not request deposit of fuel bonds, but it secured the names and addresses of bondholders, carried on voluminous correspondence with them, and kept them fully informed as matters developed.

The first of the earlier plans which was submitted to the committees in August, 1933, gave the fuel bondholders the choice of receiving for each fuel bond either (a) a $1,000.00 general mortgage bond payable only out of income until January 1, 1938, and subject to a new issue of first mortgage and prior lien bonds, or (b) a $400.00 general mortgage bond, plus common stock and warrants to purchase common stock of the new corporation. This plan offered the industrial bondholders the same treatment accorded the fuel bondholders under option (b).

Thereafter and until the fall of 1934, various other plans were submitted by the reorganization managers, including one which gave both fuel and industrial bondholders only stock of the new corporation. None of these plans accorded the fuel bondholders the treatment they were entitled to or left their bonds and lien undisturbed. All involved the issuance of securities by the new corporation and the allocation of these securities among the fuel and industrial bondholders and would have required extremely complicated appraisals and intricate adjustments as between the various classes of security holders.

The appellant committee persisted in its contention that in order for a plan to be fair and equitable the fuel bondholders must be accorded a preferred status in the allocation of the new securities or its old securities left undisturbed.

In June, 1934, a plan was submitted which appellant committee accepted but which the committee for the industrial bondholders rejected. Under this plan the fuel bondholders were to receive for each bond a $1,000.00 first mortgage bond of the new corporation, plus 10 shares of its stock at $35.00 per share, and the industrial bondholders were to receive for each bond a $400.00 income debenture of the new corporation, plus 20 shares of its common stock.

In the fall of 1934 the reorganization managers finally concluded to leave the fuel bonds undisturbed and prepared a plan that so provided.

From the foregoing it will be seen that it took much time and effort on the part of the appellant committee to convince the reorganization managers and the committee for the industrial bondholders of what would be fair and equitable relative treatment of the fuel bondholders.

Section 77B(c) (9) of the Bankruptcy Act, 11 U.S.C.A. § 207(c) (9), provides that the court "may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or

other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor."

The trial court concluded that the services of the appellant committee were not rendered "in connection with the proceeding and the plan."[1]

It seems to me that the appellant committee and its counsel made a valuable contribution to the proceeding and the plan in inducing the acceptance by the reorganization managers and the other committees of a plan which recognized the superior rights of the fuel bondholders and the rejection of the earlier plans which failed so to do. Had any of the earlier plans been presented to the court it would have been necessary for the appellant committee to oppose confirmation and no doubt it could have done so successfully. It was, of course, necessary to arrive at a plan that was fair and equitable. Instead of permitting the earlier plans to be presented to the court and objecting to confirmation the appellant committee and its counsel persisted in their efforts to induce the reorganization managers to formulate and the other committees to accept a fair and equitable plan and finally succeeded in those efforts. In so doing they contributed to the formation of a fair, equitable and feasible plan.

I think the court in finding otherwise committed a fundamental error of fact. I grant that the allowances should be kept within reasonable limits and that the trial court should be accorded a broad discretion in the fixing and allowance of fees in these matters, but I think that discretion should be predicated on a correct factual basis and not on an erroneous premise.

For these reasons, it is my view that a reasonable allowance should be made to the appellant committee and its counsel and I respectfully dissent from the conclusion reached in the majority opinion.

---

[1] In his memorandum on rehearing the trial court said:

"Counsel have not discussed the point made in our memorandum of March 1, 1937 (citing In re Paramount-Publix Corporation, etc., D.C., 12 F.Supp. 823; Id., 2 Cir., 85 F.2d 588), that mere participation in the hearings and reorganization does not necessarily entitle committees and counsel to be compensated out of the debtor's estate and that those are services for which they should look to their clients for payment. It is my opinion that the services of this Committee and their counsel were not rendered in connection with the plan and reorganization."