In re REALTY ASSOCIATES SECURITIES CORPORATION.

No. 45024.

District Court, E. D. New York.

Jan. 30, 1946.

Order Affirmed July 11, 1946.

Halpin, Keogh & St. John, of New York City (Edward S. St. John, of New York City, of counsel), for trustees.

George Zolotar, of New York City (Kiva Berke, of New York City, of counsel), for Securities and Exchange Commission.

Hooker, Alley & Duncan, of New York City (Irving L. Schanzer, of New York City, of counsel), for debtor.

Lewis Marks & Kanter, of Brooklyn, N. Y., and Julius Silver, of New York City (Oscar A. Lewis, of Brooklyn, N. Y., and Jack L. Rappaport, of New York City, of counsel), for Bondholders Protective Committee.

Root, Clark, Buckner & Ballantine, of New York City (William P. Palmer, of New York City, of counsel), for Consolidated Realty Corporation.

Percival E. Jackson and Theodore N. Tarlau, both of New York City (Theodore N. Tarlau, of New York City, of counsel), for Bondholders.

Newman & Bisco, of New York City (Perry A. Hull, of New York City, of counsel), for Manufacturers Trust Co., indenture trustee, and persons in the military service.

MOSCOWITZ, District Judge.

A hearing has been held to consider the report of the Special Master on the applications of Bondholders Protective Committee, its secretary and its counsel, for allowances for services rendered and alleged to be compensable herein. Exceptions and objections have been filed by a number of parties.

A voluntary petition for reorganization under Chapter X, Bankr.Act, 11 U.S.C.A. § 501 et seq., was filed by the debtor on September 28, 1943. On April 2, 1945, the proceeding was dismissed for the unique reason that the sole stockholder furnished funds adequate to pay all principal and interest to bondholders in full and the expenses of administering the estate. This Court passed upon all applications for allowances except the three now being considered, which were referred to the Special Master because he had recently heard and recommended denial of a motion to disqualify the Bondholders Protective Committee. While opportunity was given for testimony before the Special Master, none was offered and he was required to reach his decision upon the voluminous papers which are on file in this proceeding.

Two questions of law have been raised by the exceptions to the report. Firstly, is there any basis in the statute for compensating the Committee and its counsel at all, and secondly, are the alleged services rendered before the filing of the petition compensable under the statute?

■ Since all creditors have been paid in full, any allowances to be made herein will come out of the debtor's property. It is undoubtedly true that the Court may allow only the fees and expenses authorized by the statute and may not enforce against the debtor's property a liability neither assumed by it nor imposed by the Bankruptcy Act. In re 2747 Milwaukee Ave. Bldg. Corporation, D.C.N.D., 12 F. Supp. 557. The provisions of the Bankruptcy Act applicable hereto are contained

in Sections 242, 243 and 246, 11 U.S.C.A. §§ 642, 643, 646, reading as follows:

"242. The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the administration of an estate in a proceeding under this chapter or in connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge."

"243. The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto."

"246. Upon the dismissal of a proceeding under this chapter, or the entry of an order adjudging the debtor a bankrupt, the judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in such proceeding prior to such dismissal or order of adjudication by any persons entitled thereto, as provided in this chapter, and shall make provision for the payment thereof, and for the payment of all proper costs and expenses incurred by officers in such proceedings."

█ It is the position of the debtor that Section 246, applicable upon a dismissal of the proceeding, confines compensation of creditors' committees "as provided in this chapter," which has reference to Sections 242 and 243, and that under these sections the only services by creditors and their attorneys which are compensable are those rendered "in connection with a plan approved by the judge" (Section 242) or "in connection with the submission by them of suggestions for a plan * * *," etc. Since this proceeding was terminated before any plan was considered by the Court, the debtor argues that no services or expenses having any relation or directed to developing a prospective plan are compensable under the statute.

Chapter X was designed to avoid the disastrous effects on creditors, stockholders and the debtor of immediate forced sales of businesses in financial difficulty. It was contemplated that by placing the business temporarily in the hands of the court and by encouraging suggestions from creditors and other interested parties, the going-concern value of the business might be preserved, usually accomplished by a sufficient number of creditors agreeing to postpone enforcement of part of their claim for a period of time. Proposals designed to effectuate this end are spoken of as "plans" and the statute provides for compensation of those who offer or contribute to such plan, it being recognized that these efforts are for the benefit of the estate, being the debtor, the creditors and the stockholders as a whole. What an anomaly it would be to hold that a creditors' committee and its counsel are authorized to be paid from the estate if their services contribute to a "plan" whereby creditors receive payment of a percentage of their claims and extend the balance but cannot be paid if the same services result in creditors being paid in full. If it were necessary to do so, this Court would construe the statute as necessarily providing, though perhaps not as unequivocally expressed as it might have been, for compensation of services which would have eventuated in a plan except for the payment in full of all claims against the debtor before the proceeding had reached the stage at which any plan was considered. It cannot be said that a reorganization has not been consummated when creditors are paid and the debtor continues in business and certainly those who have contributed to this successful consummation are not to be penalized or treated less favorably than if a plan for extension of obligations or a new corporation had emerged from the proceeding.

However, Sections 242 and 243 by their terms provide for compensation of creditors' committees and their attorneys for services rendered "in connection with the administration of an estate." This estate has been capably administered by the Court-appointed Trustees under the competent counsel of their attorneys but every contemplated matter of any importance was first submitted by the Trustees in open court for consideration by all interested

parties and the applicants herein played a part in the determinations made and the consequent successful administration of the estate. The Special Master has correctly found that the Bondholders Protective Committee represented 169 bondholders whose original claims aggregated the principal amount of $473,055 and that the Committee relied upon its counsel for all action taken. The language of the Special Master's report regarding the contributions to the estate made by counsel for the Committee, including their part in the removal of Mr. Thralls as additional trustee and their opposition to the investment by the Trustees of liquid funds of the debtor, may give the impression that they were accorded sole responsibility for the beneficial results achieved, whereas in fact the Trustees and their attorneys carried the principal burden and the Securities Exchange Commission and attorneys representing other bondholders also actively participated. However, that the Special Master attempted to evaluate relative contributions, eliminating duplicative compensation, is evidenced by his statement that "care has been taken to avoid a duplication of allowances where several counsel have participated in a given matter and their joint efforts have contributed to the result achieved," in which instances "I have endeavored to apportion a reasonable fee amongst counsel so participating." The services which the Committee and its counsel did render to this estate, whether they be considered as directed toward what would have developed into a plan except for the debtor's payment of all bondholders or as services rendered in connection with the administration of the estate, are compensable and a reasonable allowance therefore is the sum of $3,500 to the Committee and $25,000 to their attorneys, together with $205.93 in reimbursement of costs and expenses incurred by them. Consideration has been given in reaching these allowances to the extent to which the services duplicated those of the Trustees and their attorneys and others acting in this proceeding. No separate allowance is to be made to the secretary of the Committee.

The Special Master made a few inadvertent errors in his report. Counsel for the Bondholders Protective Committee did not make a motion to compel disclosure of the list of creditors, as recited by the Special Master, but they, together with attorneys for other bondholders and the Securities Exchange Commission, opposed an application by the Trustees for an order impounding the list. If an inference is possible from the Special Master's report that a suggestion by counsel for the Committee of an action to set aside certain conveyances capitulated the debtor into its offer to pay off the bonds in full, there is no basis whatever in the record for such an inference. As to the first distribution to bondholders, the Trustees had under continual consideration the advisability of making a partial distribution of funds in their hands and frequently consulted with the Court on that and other matters. The first application for instructions regarding a distribution was not suggested by counsel for the Bondholders Protective Committee nor by any one else. The application was made by the Trustees upon their own initiative and was not opposed by the Securities Exchange Commission and bondholders but supported by them and by counsel for the Bondholders Protective Committee. It was the debtor which opposed and by whom the application for a stay of the distribution was made to the Circuit Court of Appeals.

The Special Master has recommended denial of any allowances to the Committee or its counsel for their efforts prior to this proceeding directed toward inducing bondholders to reject the debtor's proffered plan for an extension of its bonds. The Committee and its counsel contend that it was through such efforts that the debtor was unable to procure the required number of acceptances, while the debtor maintains that it was merely the imminency of the maturity date of the bonds and the inevitable flood of law suits which would have followed that caused the filing of a petition herein. Without passing upon the merits of the contention made by the Committee and its counsel the recommendation of the Special Master is approved as a matter of law. Sections 242 and 243 contain no specific limitation to services rendered after a filing under Chapter X and the principle is established that compensation may properly be awarded for services rendered prior to the commencement. But it appears to be equally as well established that only those services which are of direct benefit to the estate in the reorganization proceeding are contemplated. In re Ulen & Co., 2 Cir., 1942, 130 F.2d 303; Sullivan & Cromwell v. Colorado Fuel & Iron Co., 10 Cir., 96 F.2d 219; In re Mem-

phis Street R. Co., 6 Cir., 86 F.2d 891; In re Tudor Gables Building Corp., 7 Cir., 83 F.2d 871; In re Paramount Publix Corp., 2 Cir., 83 F.2d 406. In the last four of these cases is illustrated the character of services which is intended by the general language used, compensation being upheld only where the services for which it was awarded were directed toward the development of a plan which in substantial part became the plan approved by the court in the reorganization proceeding.

■ As was said in Sullivan & Cromwell v. Colorado Fuel & Iron Co., supra, 96 F.2d at page 221:

"It is common knowledge that the affairs of a debtridden corporation are sometimes so complicated that skill, patience, and extended consideration of many factors covering a long period of time are required to effect a fair and equitable plan of reorganization. It frequently is feasible and expedient to work out the plan before the proceeding is filed; and compensation may be awarded for services rendered before as well as those rendered after the proceeding is actually instituted if they had a direct and proximate relation to the formation of the plan, were valuable, and were in the interest of the debtor."

In In re United Cigar Stores of America, D.C.,N.Y.1937, 21 F.Supp. 869, the Court stated, at page 875:

"It is further urged by some of the applicants that whatever was done to assist in the administration of the estate, whether before or after the institution of the 77B [11 U.S.C.A. § 207] proceedings, inevitably tended to promote the rehabilitation of the company, and should, therefore, be deemed to have been performed 'in connection with—the plan.' * * * What is meant by the words 'in connection with —the plan' is something directly involved in the preparation, negotiation, and putting through of a plan of reorganization."

In In re Ulen & Co., supra, the applicants representing the chief debenture holders claimed that it was solely through their efforts that a proposed arrangement was defeated, that it was solely through the efforts of applicants that assets of the debtor were conserved prior to the filing in Chapter X, making possible the reorganization which followed. However, the Court held that these were not services contemplated by Section 243 because they were not of "direct benefit to the estate in the reorganization proceedings" [130

F.2d 305]. The character of the services alleged to have been rendered herein are even less akin to the standard adopted by the courts. If they produced the result claimed, they undoubtedly were valuable to bondholders in preventing acceptance of a proposal which would have been far less favorable than the outcome of this proceeding but they are not compensable herein.

The views of the Securities Exchange Commission, ably presented by Mr. Zolotar and Mr. Berke, have been heartily welcomed by this Court upon any matter with reference to which they chose to express themselves and their cooperation throughout this proceeding has been most helpful. While the Commission elected to remain silent on this application because the payment in full of all bondholders removed any public interest, their views on compensation for services rendered prior to the filing of the petition in Chapter X were offered in their brief to the Circuit Court of Appeals in the Ulen case, supra, and appear to be in accord with the decision made herein.

The sum requested by the Special Master for his services is fair and reasonable and is allowed.

Settle order on notice.