In re NATIONAL DEPARTMENT STORES, Inc.

DEMOV v. NATIONAL DEPARTMENT STORES, Inc., et al.

SAME v. NATIONAL DEPARTMENT STORES, Inc.

Nos. 5930, 6236.

Circuit Court of Appeals, Third Circuit.

Oct. 26, 1937.

Wm. A. Schnader, of Philadelphia, Pa., for appellant.

White & Case, of New York City (Joseph M. Hartfield and Milton Kramer, both of New York City, of counsel), for appellees.

Before DAVIS, Circuit Judge, and WATSON and FORMAN, District Judges.

**124**

FORMAN, District Judge.

Appellant was sole counsel for the trustees in bankruptcy of the National Department Stores, Incorporated, from June 29, 1933, until July 20, 1933, when he became associate general counsel to the trustees in bankruptcy, and continued in such capacity until April 19, 1935, when the United States District Court for the District of Delaware approved a plan of reorganization for the corporation under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), the petition under said section having been filed in June, 1934.

Appellant petitioned the court below for allowances totaling $320,000 for this period. He continued to render service until January 31, 1936, and petitioned the court for $30,000 for such additional service.

The court allowed him a fee of $60,000 on his first petition and a fee of $22,500 on his second petition, making a total of $82,-500.

He appealed from the allowance of $60,-000, and there has been a hearing on that appeal. He also appealed from the allowance of $22,500, which has been heard together with reargument upon the former appeal.

■ We agree that appellant, upon comparing the fees allowed to other lawyers in this and allied proceedings with those allowed him, may well feel justified in the belief that others were more generously treated than himself. In view of the extent and value of his services admitted by the Advisory Merchandise Creditor's Committee,[1] the attorneys for the appellee, and the learned trial court itself, it is difficult to reconcile some of the fees allowed to others for what must have been proportionately less time-consuming and valuable service. While this condition may be ever so irritating to the appellant, it does not justify this court in using such inconsistency as the yardstick by which the value of the appellant's service should be measured.

■ We believe we are confined to one simple issue, and that is to an investigation to determine whether the court below abused its discretion in making its allowances

---

[1] Although not before the court below, the following resolution was presented to this court upon the argument.

"In re National Department Stores, Inc., in Reorganization adopted by Advisory Merchandise Creditors' Committee of National Department Stores, Inc., in respect to the appeal of Jacob S. Demov, Esq., now pending in Circuit Court of Appeals, Third Circuit.

"Whereas, the Advisory Merchandise Creditors' Committee of National Department Stores, Inc., acting for 2556 creditors, constituting a majority in number and amount of the unsecured merchandise creditors of National Department Stores in reorganization, has heretofore appeared in this proceeding and filed exceptions to the application of Jacob S. Demov, Esq., for an allowance of $320,000, for his services as counsel for the Trustees in Bankruptcy and in Reorganization on the ground that said amount was excessive, and

"Whereas, the District Court has allowed said Jacob S. Demov, Esq., a salary of $60,000, in full for his services as such counsel from which decision an appeal has been taken to the Circuit Court of Appeals, Third Circuit by said Demov, and which appeal is now pending, and

"Whereas, this Committee has been active, both in the bankruptcy and reorganization proceedings since their inception and is familiar with the exceptional work and devoted services rendered to this estate by said Jacob S. Demov, Esq.,

"Now, Therefore, Be It Resolved that the Advisory Merchandise Creditors' Committee of National Department Stores file with the Circuit Court of Appeals, Third Circuit, an expression of the Committee's opinion that while the amount originally asked by said Demov, to which exception was taken, is excessive, on the other hand, the award of a salary of $60,000. made by the District Court is not a reasonable compensation for the exceptionally able and efficient services rendered by him which so largely contributed toward bringing about the rehabilitation and reorganization of the debtor's affairs, and be it further

"Resolved that counsel for the Committee be requested to transmit this resolution to the Circuit Court of Appeals, Third Circuit."

"The undersigned, Emanuel P. Lewis, Chairman, and Mortimer J. Davis, Secretary, of the Advisory Merchandise Creditors' Committee of National Department Stores in Reorganization, hereby certify that the foregoing is a correct copy of a resolution adopted and approved by said Committee.

"Dated: October 30, 1935.

"Emanuel P. Lewis, Chairman.
"Mortimer J. Davis, Secretary."

to the appellant so that it can be said that there was a manifest disregard of right and reason.

Obviously, the appellant rendered lengthy and arduous service as detailed in his petitions. The court below sat to hear his oral testimony concerning his labors as recited in his full petition. His examination in this connection took over 7 hours.

The appellant directs attention to remarks made by the court during this examination on the first petition as indicative of bias and antipathy upon the part of the court for the appellant. We cannot give much weight to these allegations.

More significant is the conduct of the court in two respects:

First, the manner in which it stresses the fact that appellant was assisted by local counsel. It says in its opinion, *"With local counsel* he attended hearings in connection with leases in *Trenton,* Minneapolis, Detroit, Pittsburgh, Cleveland, St. Louis and Philadelphia. The local counsel in these cities have been paid or are asking handsome allowances for the results of the hearings. Attempts were made to segregate the assets in the local jurisdictions of each of the stores." (Italics ours.)

█ This statement of the court appears to us not to be borne out by the evidence. We cannot find that appellant appeared represented by counsel in the proceedings in Trenton. On the contrary, he seems to have waged battle there singlehanded.

His service there was of a considerable degree.

Messrs. Otterbourg, Steindler and Houston, attorneys of the Advisory Merchandise Creditor's Committee, who were themselves allowed fees of $26,000, in objecting to the allowance of $320,000 petitioned by appellant (it was their opinion that appellant deserved $200,000 of it), had this to say about the Trenton litigation in their written argument before the court below:

"Here there were 5 different litigations instituted by the landlords, including claims for damages under the leases aggregating $875,000; proceedings to compel the Trustees to pay rent at the rate of $85,000 per annum, or to compel them to vacate the premises. There were hearings before the Referee in which over 1,100 pages of testimony were taken, numerous briefs drawn, innumerable negotiations and conferences and the like. The services were entirely successful, resulting finally in a favorable decision by the Referee, and thereafter the obtaining of a lease with a reduced rental estimated at some $40,000 a year less than previously paid. Mr. Demov values these services at $50,000.

"We are familiar with this matter because the Advisory Merchandise Creditors' Committee participated in the proceedings through us before the Referee, fearing that if the landlords prevailed, the Trenton unit would be destroyed as an integral part of the reorganization program.

"Mr. Demov personally conducted these litigations effectively. *There was no local counsel.* (Italics ours.)

"During the receivership, there had been negotiations by Mr. Schwartz and Mr. Stein, which resulted in a "scrap of paper" being initialled in a cafe which they thought settled the matter, but which did not. In the litigation above mentioned, the Referee decided that the paper was ineffective. Subsequent negotiations pending the litigation on the part of both Messrs. Schwartz and Stein proved abortive.

"Not until Mr. Demov procured a favorable decision from the Referee fixing a reasonable amount for the use and occupancy could any headway be made. After this result was obtained, Mr. Demov initiated a series of conferences in which Messrs. Schwartz, Stein, Lamport and others participated, which resulted in a new lease at a saving of over $40,000 annually less than what the landlords had been contending for.

"But despite this fine result obtained primarily through Mr. Demov's efforts and the successful conduct of the litigations, we cannot accept his estimate of $50,000 as being the reasonable value thereof.

"It was a bitterly fought litigation, involving complicated questions of fact (with respect to the valuations of the property, good will of a department store, etc.), and difficult questions of law (with respect to the rights of landlords under New Jersey law in relationship to the Bankruptcy Law, fraudulent conveyances, landlords' priorities, etc.)

"For the purpose of this computation only, and regarded as a separate job, we submit that $35,000 would be a more reasonable and fair estimate of the value of the services rendered by counsel."

The record corroborates the statement that appellant did not have local counsel in

these proceedings, notwithstanding the language of the court below in its opinion.

If the court below labored under the notion that appellant was only overseeing this Trenton litigation, and that local attorneys were being compensated, then it has obviously done appellant an injustice.

Secondly, If the court assumed to compensate appellant upon a salary basis, then it is necessary to ascertain the net amount of such salary. In its opinion it says: "Upon the basis of an annual salary of $30,000 there is now due him the sum of."

No other lawyers' services were evaluated upon this basis by the court. At least none other is so described in its opinion. Only in the case of Harry H. Schwartz, one of the trustees, did the court make a similar pronouncement. It said: "His services to the estate are worth $25,000 per year."

Mr. Schwartz had been employed by the debtor corporation previously to its bankruptcy at such a salary. It is, of course, assumed that this salary was not burdened with any expenses.

We do not pass upon the right of the court to fix the compensation of appellant on a salary basis, but in view of the fact that other lawyers were not so compensated and that it is a deviation from the general practice, it is pertinent to inquire whether the application of this method compensated the appellant reasonably in this case.

Here the appellant was engaged for practically his full time in the affairs of the trusteeship. There is not much question but that the court utilized a salary method of compensation because upon appellant's second application for $30,000 the court allowed him $22,500 without any explanation in its memorandum. The appellant, himself, admitted that he executed much less work during this period which was for a period of about 9 months. Since $22,500 is compensation for 9 months at $30,000 per annum, it is obvious that the court below was still thinking in terms of $30,000 per annum. Incidentally, he was also allowed $376.83 in expense money to accompany this allowance.

On the general philosophy governing the granting of fees, we can only reiterate the language of Judge Buffington of this court as found in the case of Bailie v. Rossell, 60 F.2d 806, 807, wherein he quoted the late Chief Justice Taft as follows: "This general principle is recognized by federal courts, when called on to give the sanction of their approval to allowances made in receiverships which in the final analysis are paid by creditors. In that respect the Supreme Court of the United States, speaking by the late Chief Justice Taft, said: 'We are desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance.' In re Gilbert, 276 U.S. 294, 48 S.Ct. 309, 310, 72 L.Ed. 580. This warning of the Supreme Court against 'vicarious generosity' has also been sounded by other federal courts."

But, on the other hand, we are left in doubt here as to whether or not the court below overlooked the matters which have appeared to us significant in our examination of the record before us. Indeed, such oversight would be excusable in view of the large number of applications and the multifarious details which came before it. First, does not the treatment by the court of appellant's services in the Trenton litigation indicate that it misconceived the extent of appellant's services? Certainly it erred in this connection in reciting that he had local counsel.

Secondly, if the court below had in mind a salary basis as the method of calculating the remuneration of appellant, no provision was made for the payment to him of expenses and usual overhead.

It is obvious that appellant could not have performed his services without considerable "overhead" expenses. They are alleged to have entailed practically all of the usual operating costs of a New York law firm, connected with aggregate services of all concerned of upwards of 13,000 hours. If he was to have served upon a salary basis then more attention must be given to ascertain that his salary should be preserved to him intact and whether allowances for legitimate expenses should not have been made to him. If, indeed, it was the intention of the court that the $60,000 should include both salary and expenses, then we should be in position to ascertain what those expenses were so that we may determine the reasonableness of the *net* "salary." The record below, though full, fails to reflect with any degree of certainty these expenses by way of overhead during the period from June 30, 1933, to April, 1935. Undoubtedly, this is due to the fact that appellant anticipated that his fees

would be calculated not on a salary basis but upon the conventional allowance arrangement as in the case of the other attorneys in the cause. This is evidenced in his petition wherein he says: "(28) Attached hereto and marked Exhibit 'D' is a statement of moneys expended by your petitioner for postage, long distance *telephones, telegrams and traveling expenses, when obliged to attend in other cities. The same does not include large sums expended by your petitioner for stationery, stenographic and typists' fees and salaries, rent, clerical and other service, notarial fees and acknowledgements, the large amount of local telephone calls, nor does the same include your petitioner's large overhead expense. Your petitioner occupies the entire thirty-third floor of the Continental Building, in New York City. At least one half of your petitioner's office and staff was used continuously in connection with the services rendered herein, and at times practically the entire office and staff as well as extra help, were so employed.*" (Record p. 222 et seq. Italics ours.)

In this state it is impossible for us to determine whether the action of the district court is consistent with right and reason, and, therefore, we remand this cause, with the suggestion that the court have the appellant appear before it and state in detail his full expenses during that period which might properly be chargeable against this case so that the court may reconsider its allowance to the appellant in the light of this opinion, having in mind that at least in the Trenton litigation appellant served without the aid of local counsel.