In re WATCO CORPORATION.

CHRIS SCHROEDER & SON CO. et al. v. WATCO CORPORATION et al.

DROUGHT et al. v. SAME.

SCANDRETT et al. v. SAME.

Nos. 6374 and 6394; 6375 and 6395; 6376 and 6396.

Circuit Court of Appeals, Seventh Circuit.

Feb. 5, 1938.

Wm. H. Voss, of Milwaukee, Wis., for appellants in Nos. 6374 and 6394.

Ralph J. Drought, of Milwaukee, Wis., for appellants in Nos. 6375 and 6395.

Eugene L. McIntyre, of Milwaukee, Wis. (Rodger M. Trump, of Milwaukee, Wis., of counsel), for appellants in Nos. 6376 and 6396.

James E. Coleman and John S. Barry, both of Milwaukee, Wis., for appellee Watco Corporation.

Martin R. Paulsen, of Milwaukee, Wis., for appellees bondholders.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

For the sake of brevity all the appeals will be disposed of in one opinion. All are by parties dissatisfied with the award made to them for services rendered (1) either as attorneys representing the trustees named in the mortgage who foreclosed the same in the state court and who also rendered services in the reorganization proceedings (Fish, Marshutz & Hoffman); (2) or for legal services rendered as attorneys for the Chicago, Milwaukee & St. Paul Railroad in protecting their client who owned the land upon which the warehouses were erected and who sought to terminate the lease upon the lessee's failure to pay the taxes and rentals (Bender, Trump, McIntyre & Freeman); (3) or for legal services rendered by Drought & Drought for bondholders in the state foreclosure suit and in the reorganization proceedings; (4) or for bondholders' committee expenses incurred in the reorganization proceedings.

The service charges of the various claimants may be divided into two classes: (a) services rendered in the foreclosure suit in the state court which resulted in a decree allowing

| | |
|---|---|
| Fish, Marshutz & Hoffman, as attorneys for the trustees of the Schroeder mortgage | $3,000 |
| Chris. Schroeder & Son Co. and Walter Schroeder compensation as trustees of Schroeder mortgage, plus disbursements | 200 |
| Drought & Drought, as attorneys for the Schroeder bondholders' committee | 750 |
| Bender, Trump, McIntyre & Freeman as attorneys for the C. M. & St. Paul Railroad | 1,500 |

and (b) services rendered in the instant proceedings wherein the parties continued either to litigate questions similar to those presented in the state court or sought to advance the reorganization plan which was finally adopted, or opposed or favored claims of certain creditors.

So much has been written by us on the subject of fees and their reasonableness and the proper approach which their determination necessitates, that it is hardly excusable for us to again state the rules or the determining factors in their allowance.

We state our conclusions only.

(1) The rule announced in Re 211 E. Delaware Place Bldg. Corporation, D. C., 13 F.Supp. 473, is applicable here.

(2) The finality of the fee ruling by the state court in the foreclosure decree must be determined by the rule laid down in Shulman et al. v. Wilson-Sheridan Hotel Co., 301 U.S. 172, 57 S.Ct. 680, 81 L.Ed. 986.

■ (3) This court is entirely in sympathy with the position of the district judge and with his desire to protect the creditors. On the other hand, we are convinced that it is as important that fees for meritorious services actually rendered and necessary to effectuate a reorganization should be allowed as it is that the court should prevent the undue enrichment of attorneys for services of no value to the debtor.

■ (4) In determining the reasonableness of the solicitors' fees we are to look to the actual value of the property covered by the mortgage rather than to the face value of the mortgage, to determine the amount involved.

·Applying these general observations to the facts disclosed by the record before us, we conclude:

■ The decree of the state court in the foreclosure suit which allowed Drought and Drought $750 is not subject to attack. It is binding upon us.

■ The same applies to the fees ($1500) allowed Bender, Trump, McIntyre & Freeman.

■ The allowance of fees for the attorneys in the foreclosure suit ($3,000) may be subject to revision. The rule announced in Shulman v. Wilson-Sheridan Hotel Co., supra, governs. As to this allowance of $3,000 for solicitors' fees in the foreclosure suit we are satisfied they were worth the $3,000 allowed by the state court. Not only was there a foreclosure of mortgages aggregating approximately $300,000 on property worth perhaps half that amount, but there was a sharply contested battle between the landlord and the creditors of the lessee, with the loss of the entire property a real possibility. The default in the payment of rent and the failure of the mortgagee (the lessee) to pay its taxes, caused the landlord, the Chicago, Milwaukee & St. Paul Railroad Co., to insist upon a termination of the lease. If the effort of the railroad had been successful there would be no *res* for distribution.

■ The allowance of fees to all the parties in the state court suit may have been questioned on appeal. Whether such attack would have been successful, we need not determine, although their allowance was somewhat unusual. Our only question is an altogether different one. May that part of the decree be attacked collaterally? We think not, although the Shulman decision leaves us in some doubt.

■ The state court in the foreclosure suit had the advice and assistance of numerous counsel representing creditors who resisted the relief sought by the railroad, and it is not easy to ascertain who rendered the effective services or how much such services were worth. We are convinced that the amount which was allowed by the state court to the counsel who foreclosed the mortgage and represented the receiver in the contest with the railroad, the landlord, was reasonable. Whether the attorneys' fees allowed in the Wisconsin foreclosure decree are binding upon the Federal Court which is proceeding under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, is, therefore, immaterial. On either theory an allowance of $3,000 is proper.

As to the claims made by various counsel for services in addition to the amounts allowed in the state court foreclosure decree, an entirely different question is presented.

The District Court disallowed all of them in toto.

Applying the rule set forth in the 211 E. Delaware opinion, supra, we cannot say there was an abuse of judgment or discretion. Undoubtedly there were services rendered, and some of them were for the benefit of the estate. There was, however, much contest between different claimants which did not in any way benefit the estate. Likewise, consideration must be given to the rights of the security holders who for years have received nothing on their bonds. Their appeal is rather insistent and persuasive.

The property has not been able to pay all the taxes which have been assessed against it. The bondholders have received no interest for many long seasons.

■ Notwithstanding our conviction that certain services which were valuable and worthwhile were rendered, the courts cannot make counsel the assignees of the bondholders. In some instances (nearly all of the work may be so described) the services were for the benefit of individual clients

against whom the charge should be made. They were not bills properly chargeable against the estate, which was not benefited by the determination of contests between creditors.

The case illustrates the need of legislation which would authorize the imposition of attorneys' fees as part of the costs to be paid by a losing contestant who institutes or delays litigation or who wilfully attempts to obstruct the early and successful consummation of plans of reorganization in 77B bankruptcy proceedings. In the absence of any such authority, courts can only direct the counsel to look to the clients whom they represent for compensation for services rendered which may have been necessary in protecting said clients' interest, but which were of no value to the debtor whose affairs were being reorganized and who was not concerned in the priority of claims of various creditors.

The line of demarcation between services rendered for a creditor client and services rendered for the estate is not always clear. There are instances when representation of a creditor not only protects said creditor, but promotes the reorganization of the debtor. Without such counsel's assistance a reorganization may be impossible. Nevertheless, the records of this court are replete with instances where the legal services were of no value whatsoever in the reorganization of the debtor and in some instances, unfortunately, of no value to the creditor who was used to block a reorganization and perhaps to develop a nuisance value. In such cases the creditor was merely an instrument to excuse the rendition of alleged legal services in a plan of reorganization when it would have been as well or better for all concerned if the hours of conference which were necessitated by such legal activities had been otherwise occupied. These observations do not apply to the case at bar so far as the claimants before us are concerned. There was apparently a trouble maker in their midst, who persisted in muddying the waters which were none too quiet and clear even when conditions were favorable.

We conclude that the discretion which the District Court exercised against the allowance of compensation to attorneys was not abused. We are convinced that the court was justified in giving weight to the allowances made by the state court and also in asking counsel to share with clients some of the misfortune which befell the latter in this unhappy venture.

The decree must be modified so as to provide for the payment of $750 to Drought and Drought; $3,000, instead of $1500 to Fish, Marshutz & Hoffman; and $1500 to Bender, Trump & McIntyre. As thus modified, the decree is affirmed.

Each party shall pay its own costs.