**SILVER** et al. v. **SCULLIN STEEL CO.**
et al. (two cases).
Nos. 11064, 11091.

Circuit Court of Appeals, Eighth Circuit.
Aug. 22, 1938.

504

Charles P. Williams, of St. Louis, Mo. (Charles M. Polk and Polk & Williams, all of St. Louis, Mo., on the brief), for appellants.

Harold R. Small, of St. Louis, Mo. (Emmet T. Carter, James E. Garstang, and Carter & Jones, all of St. Louis, Mo., on the brief), for appellee Scullin Steel Company.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The appellants, attorneys at law who represented preferred stockholders of the Scullin Steel Company in the reorganization proceedings of that company under Section 77B of the Bankruptcy Act as amended (11 U.S.C. § 207, 11 U.S.C.A. § 207), applied to the court of bankruptcy for an allowance of $20,000 out of the estate of the debtor for their services, and, after a hearing, the court entered an order, on November 9, 1937, allowing them $6,000. They have appealed from this order. One appeal was allowed by this Court and one by the court below. The appeals present but a single question and were consolidated and heard upon a single record. It is unnecessary to decide which appeal was properly taken.

The contention of the appellants is that the allowance made them for their services, out of the debtor's estate, was so grossly inadequate as to constitute a clear abuse of judicial discretion.

The general rules applicable to the allowance of attorneys' fees in reorganization proceedings are, in substance, as follows:

Subsection (9) of paragraph (c) of Section 77B (11 U.S.C. § 207(c) (9), 11 U.S. C.A. § 207(c) (9) provides that the court may allow reasonable compensation for services rendered and reimbursement for actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of them and of the debtor.

The Act lodges a broad discretion in the court of bankruptcy in fixing and allowing fees and compensation. Sullivan & Cromwell v. Colorado Fuel & Iron Co., 10 Cir., 96 F.2d 219, 222; Teasdale v. Sefton National Fibre Can Co., 8 Cir., 85 F.2d 379, 381, 107 A.L.R. 531, 535; In re Starrett Corporation, 3 Cir., 92 F.2d 375, 376; Straus v. Baker Co., 5 Cir., 87 F.2d 401, 407; In re Tower Bldg. Corp., 7 Cir., 88 F.2d 347, 349; In re Memphis Street Ry. Co., 6 Cir., 86 F.2d 891, 895; In re National Lock Co., 7 Cir., 82 F.2d 600, 605.

The judgment of a court of bankruptcy respecting allowances of attorneys' fees should not be disturbed on appeal unless there is a clear abuse of discretion (Teasdale v. Sefton National Fibre Can Co.; supra, at page 382; Sullivan & Cromwell v. Colorado Fuel & Iron Co., supra, at page 222), a manifest disregard of right and reason (In re National Department Stores, 3 Cir., 93 F.2d 123, 124, 125; West v. Fradenburg, Webb, Beber, Klutznick & Kelley, 8 Cir., 86 F.2d 318, 319; In re Grocery Center, 7 Cir., 83 F.2d 617, 618; In re National Lock Co., supra, at page 605).

The court of bankruptcy is required to exercise a sound judgment, so that the distressed debtor shall not be dealt with unfairly, and those who have rendered necessary service to the estate shall receive a fair compensation. Sullivan & Cromwell v. Colorado Fuel & Iron Co., supra, at page 222, and cases cited; In re Watco Corporation, 7 Cir., 95 F.2d 249, 251.

Reorganization proceedings should be economically administered (Callaghan v. Reconstruction Finance Corp., 297 U.S. 464, 468, 56 S.Ct. 519, 521, 80 L.Ed. 804; West v. Fradenburg, Webb, Beber, Klutznick & Kelley, supra, at page 320) and allowances for services should be moderate rather than generous (In re Gilbert, 276 U.S. 294, 296, 48 S.Ct. 309, 310, 72 L.Ed. 580). See also concurring opinion by Judge Kenyon in Trustees Corp. v. Kansas City, M. & O. R. Co., 8 Cir., 26 F.2d 876, 882.

Compensation should be allowed out of the debtor's estate only for substantial and meritorious services rendered in the advancement of the reorganization proceedings and for the benefit of the estate. Teasdale v. Sefton National Fibre Can Co., supra, 85 F.2d 379, at page 381, 107 A.L.R. 531; West v. Fradenburg, Webb, Beber, Klutznick & Kelley, supra, at page 320; In re A. Herz, Inc., 7 Cir., 81 F.2d 511, 512, 513; In re National Lock Co., supra, at page 604; In re Paramount Publix Corp., 2 Cir., 83 F.2d 406, 407; In re Consolidated Motor Parts, 2 Cir., 85 F.2d 579, 581; In re Memphis Street Ry. Co., 6 Cir., 86 F.2d 891, 893, 894; Straus v. Baker Co., 5 Cir., 87 F.2d 401, 407; In re Nine North Church St., Inc., 2 Cir., 89 F.2d 13, 15; In re Starrett Corporation, 3 Cir., 92 F.2d 375; In re Watco Corporation, 7 Cir., 95 F.2d 249, 251, 252.

No stockholder or creditor, or group of stockholders or creditors, can retain counsel and bind the court to pay such counsel the full value of the services rendered under such retainer out of the estate of the debtor. The determination of what part of the services rendered by counsel employed by stockholders or creditors may, with propriety, be charged to the trust estate is primarily for the determination of the court of bankruptcy, and, unless its determination of that question is obviously wrong, it will not be disturbed upon appeal. Compare Teasdale v. Sefton National Fibre Can Co., supra, 85 F.2d 379, 107 A.L.R. 531.

Questions of fact which condition the conclusion reached by the court of bankruptcy as to what constitutes a proper allowance for services rendered, where the determination of such questions of fact depends upon the credibility of witnesses or the weight of evidence, are ordinarily not reviewable upon appeal. Even though the evidence supporting a claim for fees is un-

disputed, undisputed evidence is not necessarily to be accepted as true. Its weight is usually for the trier of the facts to determine. Rasmussen v. Gresly, 8 Cir., 77 F.2d 252, 254; Yutterman v. Sternberg, 8 Cir., 86 F.2d 321, 324, 111 A.L.R. 736; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 442, 443.

When an application for an allowance of fees out of the estate of a debtor is made by counsel retained by creditors or stockholders, the question of what services were actually rendered, the question of the benefits which inured to the estate because of the services rendered, and the question of what proportion of the total services performed can be and should be paid for by the estate, are mainly questions of fact, and the conclusion of the court of bankruptcy as to what may reasonably be charged to the estate on account of such services, should, therefore, not be disturbed on appeal unless it clearly can be seen that there is no adequate factual basis for such conclusion or that the court proceeded upon an erroneous theory of the law in arriving at it.

One of the most disagreeable and perplexing tasks which falls to the lot of a District Judge is the determination of allowances for the services of counsel in receiverships and reorganization proceedings. Counsel for the various interests involved cannot ordinarily be expected to seriously oppose each other's claims for fees or to controvert each other's evidence as to services rendered or the value of such services to the estate. Each attorney, usually with complete honesty and sincerity, believes that his services were of the highest importance to the estate, and that had it not been for his efforts during the proceeding, the litigation would have been greatly prolonged and made much more difficult and expensive. Each attorney believes that he is asking for the least amount of compensation which with decency can be allowed him. The judge, in such a situation, must endeavor to arrive at a conclusion as to allowances which is not unfair to the estate and which, at the same time, is not unjust to counsel. With no serious controversy between applicants for fees, with little or no cross-examination of any applicant, with the evidence of each applicant virtually uncontradicted, the judge, whose duty and responsibility it is to decide, must weigh the evidence, taking into consideration the self-interest of each applicant, and, in the light of his familiarity with the proceedings in his court and with his knowledge of the value of the services which he is satisfied were actually rendered, must arrive at some approximately fair conclusion. Unquestionably, injustices will occur, but they will not be lessened by having the appellate courts substitute their judgment, based upon a written record, for that of a judge who saw the witnesses and heard the testimony and who has "far better means of knowing what is just and reasonable than an appellate court can have," Trustees of Internal Improv. Fund v. Greenough, 105 U.S. 527, 537, 26 L.Ed. 1157. This does not mean that an appellate court is to accept blindly the determination of a lower court as to what constitutes the reasonable value of services rendered by an attorney and chargeable to an estate. The judges of both courts are to be regarded as experts as to the value of legal services, and it is the duty of the appellate courts to keep allowances for such services within reasonable bounds. Federal Oil Marketing Corp. v. Cravens, 8 Cir., 46 F.2d 938, 940-944; Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940, 945, 946; Blackhurst v. Johnson, 8 Cir., 72 F.2d 644, 648. They will not, however, ordinarily disturb allowances unless clearly excessive or clearly inadequate.

There is nothing extraordinary in the situation presented by this record. The Scullin Steel Company was a going concern with assets of the book value of some $7,500,000. Its business, which is conducted in St. Louis, Missouri, is that of a steel foundry and rolling mill. Its earnings in times of prosperity have been large, and in other times small. Its capital structure consisted of bonds, debentures, notes, preferred stock, and common stock. By 1935, when it filed a petition for reorganization, its bonds, debentures and notes were in default, due to the depressed economic conditions. There was, however, a large equity for stockholders and unsecured creditors if some plan of reorganization could be worked out which was fair, equitable, feasible, and acceptable to all interested. The company sought reorganization for the benefit of its stockholders and general creditors.

The appellant, Mr. Silver, an attorney of New York of high standing and of great experience in corporate matters, was employed by several brokerage firms which held or controlled more than ten per cent of the preferred stock of the debtor. Mr.

Silver retained as his associates the other appellants, who are prominent lawyers of St. Louis. The appellants co-operated with the attorneys for the debtor and with the attorneys for the secured creditors, endeavoring to arrive at a satisfactory scheme for reorganization. A plan was first filed by the debtor on January 15, 1937. This met with many objections and was not presented for confirmation. On May 21, 1937, after many conferences with interested parties, including the appellants, counsel for the debtor filed a modified plan of reorganization which, being acceptable to everyone, was confirmed on September 10, 1937.

In November, 1937, the applications of counsel for the various interests for allowances came on for hearing, with the following results: The attorneys for the debtor, who asked for $32,000, were allowed $20,-000. The attorneys for the preferred stockholders (appellants), who asked for $20,000, were allowed $6,000. The attorneys for the trustee for the bondholders, who asked for $1,500, were allowed $1,500. The attorneys for the debenture and note holders, who asked for $3,500, were allowed $3,500. The attorneys for certain bondholders, who asked for $12,000, were allowed $5,000. The total amount applied for as compensation for legal services was $59,-500. The total amount allowed by the court to counsel for legal services was $36,000.

At the hearing upon their application for fees, the appellants testified in great detail as to the services which they had rendered. It would unduly extend this opinion to set out this evidence. The appellants have summarized the factual basis for their claim in their brief as follows:

"There was involved here an estate of approximately seven and one-half million dollars. The Debtor was plainly in a serious condition, by reason, among other things, of heavy fixed annual charges. The result accomplished by the modified plan was to decrease the amount of the annual fixed charges necessary to be paid to avoid defaults, to approximately ninety thousand dollars.

"The appellants made many valuable contributions to the modified plan and to its execution. Among other things, they suggested the modification of the original plan of reorganization by the elimination of scrip, which was interest bearing and payable in installments. They suggested the plan for the issuance of stock purchase warrants to bondholders, debenture holders and preference stockholders, thereby stilling controversy as to the treatment of common stock. They suggested the incorporation in the modified plan of a provision making the new mortgage bonds convertible, on option, into common stock. They suggested making the new preferred stock, to be issued to debenture holders, convertible into new common stock. They suggested the elimination, for a period of years, of the requirement of a fixed sinking fund. They suggested the incorporation of a provision in the modified plan, increasing the amount of common stock to be awarded to old preferred stockholders, from one share to one and one-quarter shares. They suggested the issuance to holders of the old common stock of one-third share of new common for each share of old common, instead of one-half share of new common for each share of old common, as originally proposed, as well as the requirement that the new common stock so issued be held in trust for two years and kept off the market.

"Appellants successfully opposed any suggested plans for requiring the deposit of old bonds or stock with a depositary, for the reason such requirement would hinder assets. They went over and made many suggestions for changes in the articles of association of the new company, practically all of which were accepted and made use of. They examined and made suggestions of changes in the securities to be issued by the Debtor, and in the indenture securing the new bonds. A number of these suggestions were accepted and incorporated. In particular, appellants, at the request of Debtor's counsel, worked out a clause as to the application of moneys in the sinking fund not exhausted by tenders. The appellants suggested certain changes in the proposed by-laws of the new company, all of which (with one exception) were accepted.

"There were many conferences, some of them very lengthy, participated in by appellants in an endeavor to induce agreement among the various parties interested. While there is no time statement, it must be apparent that a great deal of time was devoted."

For the purposes of this opinion, we think it may be taken for granted that the appellants are eminent, skillful, successful, and experienced attorneys at law; that they rendered valuable services at the request of some of the preferred stockholders

of the debtor, which inured to the benefit of the debtor's estate as well as to the benefit of their clients and all other preferred stockholders; that these services were worth $20,000; and that the debtor was abundantly able to pay whatever compensation for legal services rendered to it or for its benefit the court might order it to pay.

Upon these facts, we are of the opinion that the allowance of $6,000 did not constitute an abuse of discretion. The court below could properly have concluded that, on the basis of the benefits which flowed from the appellants' services, three-tenths of their fees should be paid for by the estate and seven-tenths by their clients. Unfortunately, the appellants had agreed with their clients that they would look only to the debtor's estate for their compensation. That agreement was made without the sanction of the court of bankruptcy, and was apparently based upon the erroneous assumption by the appellants that if they represented preferred stockholders as a class, and not as individuals, the court would be obliged to order the estate to pay them in full for their services, provided that the services were beneficial to the estate. The appellants were not employed by the debtor; they were not employed by the court to assist counsel for the debtor; they entered their appearance for a firm controlling more than ten per cent of the preferred stock; their failure to collect the full value of their services is due to their agreement with their clients, and not to any abuse of discretion on the part of the court below. The court did not, as the appellants suggest, find that the full value of the services rendered by them was only $6,000. It did not pass upon that question at all.

The debtor directs our attention to the fact that in the application of its counsel for an allowance for their services rendered in the reorganization proceedings, they based their claim for fees in part upon the services rendered in preparing not only the original plan of reorganization, but also the modified plan. This merely illustrates what has already been adverted to, namely, the difficulty of ascertaining with complete accuracy what the services rendered by each of the various counsel actually contributed to the successful outcome of the reorganization proceedings.

 We are fully aware of the importance of adequately compensating counsel whose services really benefited the estate. At the same time, we recognize the importance of not interfering unreasonably with the considered judgment of the lower courts with respect to matters of this kind, when the conclusions reached by them are within the realm of what might reasonably be considered fair and just. In this case, we can see no reason why the stockholders for whose particular benefit the reorganization proceeding was successfully put through should have an absolute right to require the estate of the debtor to compensate their attorneys in full. We are satisfied they had no such right. See Straus v. Baker Co., 5 Cir., 87 F.2d 401, 407; In re A. Herz, Inc., 7 Cir., 81 F.2d 511, 512, 513. The right of the stockholders and their attorneys was to have the estate make some reasonable contribution on account of services rendered, taking into consideration the value of the services to the estate as well as their value to the stockholders themselves. What that contribution should be was, within broad limits, for the lower court to determine.

The order appealed from is affirmed.