## In re PITTSBURGH TERMINAL COAL CORPORATION.

### No. 20716.

District Court, W. D. Pennsylvania.
Jan. 22, 1947.

See, also, 2 F.R.D. 568.

James I. Marsh, Samuel Kaufman and Marsh & Kaufman, all of Pittsburgh, Pa., for trustee.

William M. Kilcullen, of New York City, and James A. Nugent, of Pittsburgh, Pa., for Pittsburgh Terminal Realization Corporation and another.

Allen H. Berkman, of Pittsburgh, Pa., and Samuel Marion and Nathan D. Leiman, both of New York City, for Preferred Stockholders Committee.

George Zolotar, of New York City, for Securities and Exchange Comm.

GIBSON. District Judge.

The present matter involves the claim of Samuel Marion, Allen H. Berkman and Nathan D. Leiman, attorneys for the Preferred Stockholders' Protective Committee. Their claim is for "additional compensa-

tion" under the agreement in a letter signed by Alexander Guttmann, chairman of the committee, which declared that 584 shares of preferred stock were held in escrow for the claimants as additional compensation for their services.

On November 16, 1945, the court allowed the claimants $37,500.00 out of the debtor's estate. Their claim for compensation was evidently misconstrued by the court, which qualified the allowance by stating that it "is complicated by an agreement with members of the Protective Committee to hold a number of shares of the debtor's stock for the benefit of counsel. Counsel should not have their compensation duplicated, and the present order is made upon the statement that the original agreement with the Protective Committee is set aside." That misconception of the claim of counsel for the Preferred Stockholders Committee was perhaps due to the fact that they joined plainly non-compensable services with the compensable in their claim against the debtor's estate. Later the court, upon being satisfied that counsel had not intended to waive additional compensation under the deposit agreement by their claim for compensation from the estate, made an order which held, in part, that the allowance of $37,500.00 was made: "without prejudice * * * to any rights which said claimants have in an agreement, whereby certain stockholders deposited 584 shares of debtor's preferred stock in escrow with the Protective Committee for Preferred Stockholders of Pittsburgh Terminal Coal Corporation, Debtor, as additional compensation to said claimants for their services."

This order, having been made without notice to the reorganized company and the Stockholders Committee, was later vacated as inadvertently made. The Pittsburgh Terminal Coal Corporation and the debtor's committee, and with them the Securities and Exchange Commission, have contended that in a Chapter X proceeding, 11 U.S.C.A. § 501 et seq., the court has the duty of determining the reasonableness of all fees, whether compensable fees chargeable to the estate or for those which are noncompensable and which cannot be so charged. The claimants, on the other hand, have contended that the court is without jurisdiction except as to claims chargeable to the debtor's estate.

These conflicting contentions having been made by the parties in interest, the court ordered that a hearing be had and testimony be introduced in order that the validity and scope of the claims of Messrs. Marion, Berkman and Leiman might be determined. At the hearing on September 10, 1946, the claimants alleged that, in addition to the services rendered by them to the Preferred Stockholders Protective Committee for which compensation had been allowed to the amount of $37,500.00, they had given other considerable legal services to the Preferred stockholders on whose behalf the 584 shares of stock had been deposited in escrow and were entitled to "additional compensation" from them.

Alexander Guttmann, chairman of the Preferred Stockholders' Protective Committee, while not denying that claimants had rendered services which could not be charged against the Debtor, and which were rendered at a time when any such compensation from the debtor's estate seemed improbable, asserted that the deposit of stock in escrow was to be effective only in case no considerable award should be made from the debtor's estate. He also contended that of the 584 shares mentioned in the agreement 146 shares were to be returned to certain of his relatives. His counsel puts great stress upon an action brought in behalf of Rita Crepeau, et al. and treats it as though it were the foundation of the Trustee's action against the North American Coal Corporation et al., which was the source of the ultimate fortunate recovery of the fund for distribution. As a matter of fact the earliest efforts of the claimants were hostile to, and not of benefit to the Trustee's action.

The court has had no difficulty in determining that the claimants rendered services to the preferred stockholders named in the escrow agreement which were not compensable from the fund distributed by order of the court. Among such services were those rendered in connection with the sinking fund claims, Guttmann's criticism

of the Trustee's sales of machinery and his management of the real estate, his rent collections and the repair of the debtor's houses and other property.

That such services to the Preferred Stockholders Committee, at the request of its members, are entitled to a reasonable recompense seems unquestionable if the escrow agreement is to be reasonably interpreted. As to the method of recompense, however, considerable controversy has arisen.

The claimants contend that this court is without jurisdiction to determine the amount. The present counsel for the preferred stockholders who have deposited the stock asserts that the court has power to pass upon the claim, but should deny any recovery to claimants in view of the testimony of Alexander Guttmann. The Securities and Exchange Commission, on the other hand, contends that the court not only may pass upon the claim, but has the duty of so doing, and that the testimony entitles claimants to a determination of the amount to which claimants are entitled and to an order awarding that amount to them.

The Securities and Exchange Commission bases its contention upon its interpretation of Section 221(4) of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 621(4), which provides:

"The judge shall confirm a plan if satisfied that—* * *

"all payments made or promised by the debtor or by a corporation issuing securities or acquiring property under the plan or by any other person, for services and for costs and expenses in, or in connection with, the proceeding or in connection with the plan and incident to the reorganization, have been fully disclosed to the judge and are reasonable or, if to be fixed after confirmation of the plan, will be subject to the approval of the judge."

It will be noted that the conditional deposit of the stock in question was made prior to the confirmation of the reorganization plan.

Undoubtedly Section 221(4) requires the court to scrutinize the proposed plan in respect to all the phases mentioned in it, and to determine whether the payments made or promised are reasonable or whether they tend to vitiate the plan. But nowhere in it is it recited that the court has the duty of both determining that such an amount paid or promised is reasonable and of making an order requiring the payment of such amount even though it cannot be charged to the fund for distribution. Under Chapter X administrative expenses are authorized, and those who have aided in the reorganization are entitled to compensation for their efforts; but they are awarded such compensation by means of an order upon the trustee by the court. If one had promised compensation to his counsel for his services in a reorganization, but his counsel has not aided in the proceeding, Section 221(4), in the opinion of the court, furnishes no authority for an order, upon the promisor to pay the counsel the amount promised or what, in the opinion of the court, is the reasonable value of his services. The existence and scope of the promise creates an issue not before the court.

In Re Standard Gas & Electric Co., 3 Cir., 106 F.2d 215, 216, the court awarded counsel part of the claim, and stated as to the balance: "It is clear that much of his work duplicated that of others and was, therefore, not properly compensable out of debtor's estate. This, of course, is not to say that these services were not properly rendered to his clients, but merely that they should be paid by those clients alone."

The court did not undertake to order the payment by the clients.

In Greensfelder v. St. Louis Public Service Co., 8 Cir., 114 F.2d 53, 54, the court, after awarding part of the claim, held: "In reorganization proceeding under the Bankruptcy Act, the court in allowing fees, was not concerned with amount of fees which noteholders' committee, or the clients of attorney retained thereby, might be obligated to pay him."

In Zweifel, Tuohy & Crager v. Trans-State Oil Co., 5 Cir., 99 F.2d 650, 651, the agreement between the president of the debtor and his counsel was that counsel, in addition to the amount which would be

awarded him by the court, should receive the sum of $10,000.00 payable after payment of the creditors as set out in the plan. The lower court held that such agreement was binding on the debtor, and failed to award counsel any compensation for his services, although finding that his compensable services, had the agreement not been in evidence, were worth a sum less than $10,000.00. The Court of Appeals held: "We concur with the court below that such agreement was binding on it (the debtor) in this proceeding, and that it had no jurisdiction to determine its validity as an obligation of the debtor; but we think the court erred in declining to allow any compensation to appellants payable out of the assets of the estate. There was no intention on the part of the debtor or its attorneys that the agreed amount of ten thousand dollars should be in lieu of any such allowance by the court." See also, In re Watco Corporation, 7 Cir., 95 F.2d 249.

As against the foregoing authorities, which reflect the opinion of this court, a quite respectable authority has been cited, and one which requires some courage when a lower court presumes to accept a contrary view.

In re McCrory Stores Corporation, 2 Cir., 91 F.2d 947, a committee of creditors engaged an attorney, paying him a retainer of $25,000, and agreeing to pay him 10% of any proceeds paid to creditors represented by him. The creditors were paid in full and in addition received interest to amount of 19%. By the agreement the attorney would have received $84,000. The District Court, sustained by the Court of Appeals, found that the services were reasonably worth only $35,000. The Court of Appeals stated that the "scrutiny clause" of Section 77B, sub. b (10), 11 U.S.C.A. § 207, sub. b(10) (which is embodied in Chapter X, § 212, 11 U.S.C.A. § 612) "Authorized him (the District Judge) to restrain the committee from proceeding under the contingent fee agreement after the reorganization petition was filed." 91 F.2d at page 949. The order of the District Court allowed counsel $10,000, the $25,000 part of the fee having been paid when he

was retained. This sum, by the order, was to be paid from an allowance to the creditors theretofore approved.

In respect to the charge to the creditors' allowance, the instant matter differs from the case cited. In the instant case no sufficient fund has been credited to the depositing stockholders against which any allowance to claimants could be charged. The judgment, if any were entered, would be directly against the stockholders. Even if it were admitted that the court had jurisdiction to reduce the amount of the fee contract, where such course is practicable, a direct charge against the depositing stockholders, who are disputing the right to recover any amount, in view of the uncertainty as to the value of the stock deposited seems to stretch the interpretative powers of the court too far.

Feeling that the court has not jurisdiction to make such a charge against the depositing stockholders, an order will be made in substance repeating the order of this court of November 26, 1945.

### Order

And now, to wit, January 22, 1947, it appearing after due hearing that the allowance of $37,500.00, granted to Samuel Marion, Allen H. Berkman and Nathan D. Leiman by order of this court of November 16, 1945, as compensation for services rendered the estate of the debtor in the reorganization proceeding at No. 20716 In Bankruptcy, was without prejudice to such rights as said Marion, Berkman and Leiman may have in an agreement whereby certain stockholders of said debtor deposited 584 shares of debtor's preferred stock in escrow with the Preferred Stockholders' Protective Committee of said debtor as additional compensation to said claimants for their services to said stockholders, as more fully appears in a letter from Alexander Guttmann to said claimants (which letter is referred to on page 34 of claimants' petition for allowances and offered in evidence at the hearing for allowances held October 3, 1945), and the court further finds that it is without present jurisdiction to determine the value of the

additional services rendered to said depositing stockholders by said Marion, Berkman and Leiman and to charge the amount thereof to said stockholders.