## In re LAISTER–KAUFFMANN AIRCRAFT CORP.

### No. 11159.

United States District Court
E. D. Missouri, E. D.

Jan. 3, 1952.

12. Texas Unemployment Compensation Commission v. Frank, Tex.Civ.App., 229 S.W.2d 399.

---

Barksdale, Abbott & Thies and Victor A. Wallace, all of St. Louis, Mo., for applicants.

Harry S. Gleick, St. Louis, Mo., for Joseph Chused trustee.

HULEN, District Judge.

Debtor filed a Chapter X proceeding in this Court on October 4, 1946. No plan of reorganization of debtor was ever presented. On January 2, 1951, debtor was adjudged bankrupt and the case referred to the Referee in Bankruptcy. There is now for ruling an application (two, in fact) for fee allowance by debtor's attorneys. One issue involves services from October 4, 1946, date of filing the debtor's petition under Chapter X, to January 2, 1951, date of order of adjudication in bankruptcy. Time

on this claim is itemized as 451¾ hours; amount requested is $9,000. We are also concerned with compensation received for services, to the debtor, prior to the filing of the Chapter X proceeding, from August 29, 1946, to October 4, 1946. Time is itemized as 263½ hours; claim is for $5,661.01.

This is the second presentation of the first issue. Hearing before this Court, instead of before the Referee in Bankruptcy, on the second issue results because when the attorneys' claim was first heard in January of this year it developed during the hearing that applicants had received $6,000 from debtor as retainer fees: $3,500 about September 4, 1946, and $2,500 the day before the filing of the petition under Chapter X. Also, it appeared that a separate general claim had been filed on January 2, 1951 for a balance due on attorneys' fees for services up to and including September 29, 1946, in the sum of $7,500 plus $338.99 for expenses, making a total of $7,838.99. Applicants credited on this claim the two retainers totaling $6,000, leaving a "balance due" applicants of $1,838.99. This claim was withdrawn by applicants on January 26, 1951. The payment of the two retainer fees, the filing of the claim for a balance due of $1,838.99, and the withdrawal of the claim was developed on cross-examination of one of the applicants, Mr. Abbott. Mr. Abbott explained his position on the subject as follows:

"Q. Your present position in the matter is that the $6,000.00 was reasonable compensation for services rendered to the Debtor between August 31, 1946, and October 4, 1946? A. No. I made no such statement.

\*      \*      \*      \*      \*      \*

"A. There was two payments. \* \* \*

"A. The first one was made on September 4th, and some time during the month of September we took up with the Debtor, discussed with him and agreed with him that that payment had been consumed and that we should have an additional payment. Then they agreed to give us—I think it was $2500.00 more. They did not get around to paying it until October 2d or 3d, whenever it was. And so I have made no statement

952

as to how much was consumed of the entire amount prior to October 4th.

\* \* \* \* \* \*

"\* \* \* We did not want to have an overlapping bill, and I don't think we do have, and we don't think our claim here should contemplate anything prior to October 4th, and we think that we should account for the services up to October 4th against that retainer, and if we can not account for it, why, then we should pay it back. That is our position."

The claim was disallowed "without prejudice" on February 27, 1951, D.C., 96 F. Supp. 231, under Title 11, U.S.C.A. § 108, sub. a, which provides in case of mutual debts or credits between the estate of a bankrupt and a creditor, one debt shall be set off against the other and only the balance shall be allowed. By leave of Court applicants then amended and refiled their claim in the form now before the Court. The amended claim suggests the conclusion, although it is not so stated, that applicants are now waiving any claim for additional compensation for services rendered between August 29, 1946 and October 4, 1946, but assert the services rendered during that period "was [reasonably worth] not less than the sum of $5661.01", being the total of the two fees of $3,500 and $2,500, respectively, less $338.99 expenses. It is the Trustee's position that the retainers were paid in contemplation of bankruptcy and that the Court has jurisdiction to determine the reasonable value of the services rendered in connection with the two retainers, and if the applicants between August 29, 1946 and October 4, 1946 did not render legal services of a reasonable value of $5,661.01, that the amount of retainer over and above reasonable compensation be charged against applicants and offset on Claim 1. The Trustee in Bankruptcy moved the Court for a joint hearing, first on the claim for services subsequent to the filing of the Chapter X proceeding, and second on the applicants' allegation in amended claim that legal services had consumed the $6,000 in retainer, less expenses, prior to the filing of the Chapter X proceeding.

■ We conclude the record shows the services performed by applicants between August 29, 1946 and October 4, 1946 were in contemplation of bankruptcy proceedings. The first entry on the itemized statement of time under date of August 29 reads: "Conference with Mr. Laister, and library work, with respect to application of Chapter X of the Bankruptcy Act [11 U.S.C.A. § 501 et seq.] and the Higgins case \* \* \* 2½ hours". Thereafter running through the itemized statement we find 55 hours of the 263½ hours are devoted to the subject. The major portion of the remaining time is in regard to contract termination claim, attempting to get an advancement of funds from Washington. Applicants in their amended claim describe the conditions prevailing prior to filing of the Chapter X proceeding and after August 29, 1946, and the character of services rendered by them as follows: "That the services rendered by applicants pursuant to this special emergency employment were rendered to a going concern, having assets in excess of $1,225,000.00, and concerned a termination claim of said corporation of approximately $1,000,000.00, on account of a $14,000,000.00 contract. That had the United States Army Air Forces carried out commitments obtained by applicants to advance funds to the Debtor corporation during this critical period the creditors would have stood by, content with their payments on account (as many had already agreed), until the termination claim was settled and collected. Upon the best of their knowledge, information and belief, applicants state that had this termination claim been negotiated and settled with the corporation as a going concern, rather than with a corporation in reorganization under the Bankruptcy Act, a fair and equitable settlement would have been forthcoming and the corporation and its business would have been preserved, with all creditors paid in full and a capital stock of over $235,000.00 and a surplus of approximately $170,000.00. As hereinafter shown part of the services referred to were rendered in Washington, D. C., and, among the services rendered at Washington were extensive conferences with high Government officials, by Mr. Barksdale and officers of the Debtor, such Government officials including the Hon-

orable Kenneth C. Royal, Under Secretary of War; Honorable Stewart Symington, Assistant Secretary of War for Air; Major General Powers; Brig. Gen. Rawlings; Brig. Gen. Christmas; Brig. Gen. Booth; Col. Simms, Col. Autry, Col. Parkinson; and other officials, department heads, accountants, attorneys and Government representatives; at which time a commitment to advance funds in amount of $75,-000.00 to the corporation against its contract termination claim, referred to in this paragraph, was obtained. That, as previously stated, these services were rendered on an emergency basis, to the exclusion of all other business of applicants at the time, upon the specific request of the executive officers of the Debtor corporation. That applicants' records show at least 178 direct hours devoted to these services at St. Louis, plus 6 full days of 24 hours each in two trips to Washington, D. C. On many of the latter days Mr. Barksdale, of applicants' firm, devoted 16 to 18 hours per day, in conferences with numerous officials, some of whom are referred to above, and Army Air Force officials and other Government officials and attorneys, and no business other than that of the Debtor corporation was transacted by Mr. Barksdale at Washington, D. C."

■ We do not understand applicants seriously to challenge the position of the Trustee that this Court has jurisdiction to pass on the reasonableness of the fees involved in the payment of the retainer fees by the bankrupt.

■ Applicants represented the debtor for many years prior to the filing of the Chapter X proceedings. There was an agreement between the applicants and the debtor during this period that they would be compensated for legal services on the basis of $10 per hour. During this period a charge of $10 per hour was reimbursed by the Government without question. Applicants had been given to understand payment of any higher charge would be held up pending inquiry as to the correctness of the charge. Applicants never made a charge in excess of $10 per hour. The record in our opinion does not sustain any

different agreement with respect to the services performed by applicants subsequent to August 29, 1946, as to rate of compensation. A few days prior to the payment of the second retainer applicants informed one of the officers of the Debtor that the first retainer had been consumed and asked for a second retainer of $2,500 which was paid on October 3rd. The proof does not sustain applicants' position that the debtor agreed to compensate the attorneys on a different hourly charge. At the time of asking for the second retainer the debtor requested, and applicants agreed to furnish, a statement of time expended in connection with use of the first retainer of $3,500. This accounting was never made prior to the filing of an exhibit in this hearing.

Applicants stressed the two trips to Washington and express their opinion that reasonable compensation for these trips would be $500 per day. The first trip was September 15th to September 17th. Eight hours time is charged on September 15; 18 hours time is charged on September 16; and 10 hours time on September 17. The second trip was September 25th to September 28th. 15¾ hours time is charged on September 25; 15 hours time on September 26; 14 hours time on September 27; and 19 hours on September 28.

Claim for attorneys' fees during the period subsequent to filing of the Chapter X proceeding has been classified by the applicants:

"The day-to-day services listed on the affidavit attached to the application of Barksdale, Abbott & Thies have been classified from available information and this classification shows the following totals:

1. Services from filing of petition on October 4, 1946, to and including October 7th, 1946, the date of the appointment of the Trustee ................... 18¼ hrs.
2. Services performed at the request of the Trustee ........................... 170 "
3. Court services other than at the request of the Trustee.................... 220¼ "
4. Services in performing corporate functions ............................ 16¾ "
5. Miscellaneous services to the Debtor.. 26½ "

Total ...................................... 451¾ hrs."

During the hearing, in testimony given by Mr. Abbott items going to make up

954

classification No. 2 were identified in some instances as giving legal opinions to the Trustee, reflecting the position of the debtor on contemplated actions by the Trustee and in other instances as the mere perfunctory supplying of information to either the Trustee or some of the Trustee's employees. Because of applicants' representation of the debtor for a long period prior to filing the Chapter X proceeding they had many files needed by the Trustee and were in a position to give useful information about the files and debtor's business activities. In some cases when applicants were not in the office the information was given by their secretary. No charge is made for the latter services. We asked the applicants to give us a breakdown of the 170 hours, as to what part represented the giving of legal opinions and what part the supplying of information. Applicants have now filed an affidavit containing this statement: "After further study of the classification #2 items, applicants are firmly convinced that time is included in the affidavit in an amount not in excess of ten (10) hours for services which could have been performed by a person other than a lawyer. Applicants believe and state * * * that 160 of the 170 hours in classification #2 are strictly lawyer services."

Services performed by the applicants under classification #3 have to do with opposing confirmation of settlement of termination claim, as recommended by the Trustee. After ruling confirming the settlement in this Court an appeal was taken by a creditor. Daniel Hamm Drayage Co. v. Willson, 8 Cir., 178 F.2d 633. Applicants seek compensation in connection with briefs and appearance in the Court of Appeals.

The character of circumstances presented to this Court in ruling on the pending application is not new. We find our position graphically described in Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503, 506: "One of the most disagreeable and perplexing tasks which falls to the lot of a District Judge is the determination of allowances for the services of counsel in receiverships and reorganization proceedings. * * * Each attorney, usually with complete honesty and sincerity, believes that his services were of the highest importance to the estate, and that had it not been for his efforts during the proceeding, the litigation would have been greatly prolonged and made much more difficult and expensive. Each attorney believes that he is asking for the least amount of compensation which with decency can be allowed him. The judge, in such a situation, must endeavor to arrive at a conclusion as to allowances which is not unfair to the estate and which, at the same time, is not unjust to counsel. * * * the judge, whose duty and responsibility it is to decide, must weigh the evidence, taking into consideration the self-interest of each applicant, and in the light of his familiarity with the proceedings in his court and with his knowledge of the value of the services which he is satisfied were actually rendered, must arrive at some approximately fair conclusion."

The law with respect to allowances for attorneys' fees is plain but general: "* * * the administration of the debtor's estate must be conducted with the strictest economy. Allowances for counsel * * * must be moderate, not only in the interest of debtor and creditors, but in the public interest as well." London v. Snyder, 8th Cir., 163 F.2d 621, 625.

"Compensation should be allowed out of the debtor's estate only for substantial and meritorious services rendered in the advancement of the reorganization proceedings and for the benefit of the estate." Silver v. Scullin Steel Co., supra.

For many years and up to August 29, 1946, applicants represented the debtor in their legal matters on the basis of $10 per hour. We see no basis even for argument that applicants considered such compensation less than reasonable for their services. Applicants assert the services performed by them between August 29, 1946 and October 4, 1946 were vital to the continued operation of debtor. The itemized statement shows the services to be varied. We assume all legal services performed by applicants for debtor, prior to filing the Chapter X proceeding, were of a necessary nature, varying in importance

from vital to routine. The debtor received no benefit from the services rendered in trying to get funds advanced by the Government. They were unable to secure a commitment to advance funds to tide the Debtor over the period of financial stress. The commitment of $75,000 got as far as a St. Louis bank but it was recalled and cancelled by the Government.

■■ In view of the obligation resting on this Court to administer debtor's estate with the "strictest economy", and that allowances to counsel "must be moderate", we cannot justify a conclusion that promptly upon the debtor contemplating bankruptcy the reasonable value of the services of debtor's counsel thereupon increased in value—or, as claimed, more than doubled in value. Nor can we bring ourselves to agree with applicants that compensation on the basis of $500 per day for the Washington trip would be reasonable under the circumstances of this case. Compensation for such services for an attorney doubtless should be on a higher basis than office service. When an attorney is in his office he is available for conferences or calls which require his attention from other clients. He is not when in Washington or in transit. It is our opinion that reasonable compensation in this case for such character of services would be $600 for the first trip of three days, and $800 for the second trip of four days.

We find that for the period August 29, 1946 to October 4, 1946 compensation of $10 per hour is reasonable, except as to time spent on the two Washington trips. Applicants are allowed a credit of $1,400 for the two Washington trips, plus 163¾ hours at $10 per hour, or $1,637.50, for the time during said period, less the hours shown for the Washington trips, or a total of $3,037.50, on the balance of the retainer fee of $5,661.01. $2,623.51 should be charged against applicants and offset against their claim for services to the debtor subsequent to October 4, 1946.

Undoubtedly the Trustee received services of value from the applicants during the period of administration of this estate. Many of the litigation files doubtless had

to be interpreted for the benefit of the Trustee and that could best be done by applicants. It was contemplated for a period of time that if a settlement could be made with the Government the debtor could be reorganized, and with this in mind the Trustee exercised extreme care to confer with debtor's counsel on legal matters from time to time to get the viewpoint of the debtor as to the course to be pursued which would be for the best interest of the debtor should it be reorganized, as well as the best interest of the estate.

■ Time under classifications 1, 2, 4 and 5 is allowed on the testimony of applicants that it was for the benefit of the estate.

■ Classification #3, according to the testimony of applicants, with the exception of 15 hours, as a maximum, represents services in opposing the settlement of the contract termination claim. The advantages and disadvantages of the settlement of this claim were carefully, minutely, and fully presented to the Court by the Trustee, viewed from the interest of all parties and in the alternative, if the settlement were refused. Settlement was recommended by the Trustee as for the best interest of the estate. Applicants, as attorneys for the debtor and also a stockholders' committee, opposed the settlement. They did nothing to aid the Court or the estate in this matter. The basis of their opposition was a plan for relief by an Act of Congress, for which they did not even have a promise. It was the opinion of the Trustee, in which the Court concurred, that unless the settlement was made, serious reduction in the assets of the estate would result. Notwithstanding this opinion of the Trustee, the applicants, on behalf of the debtor and the stockholders' committee, pursued the forlorn hope of relief from Congress and attempted to delay the settlement. A large amount of the charge contained in Item 3 is for services on briefs in the appellate court, on appeal from approval of the settlement by this Court. Neither the debtor nor the stockholders' committee had any standing in the Court of Appeals. They had not taken any ap-

956

peal from this Court's order. The record does not support a finding that applicants' services on behalf of debtor and the stockholders' committee, in opposing the contract termination settlement in this Court and the Court of Appeals, represents services rendered in advancement of the reorganization proceedings or for the benefit of the estate. They would have been very detrimental to the estate had they been successful and the Government withdrawn its offer of settlement due to their opposition. Services under Classification #3 are disallowed, with the exception of the 15 hours spent by applicants on hearing on the adjudication of debtor as a bankrupt and routine court appearances at the request of the Trustee.

We allow applicants' claim for 18¼ hours under classification one; 170 hours under classification two; 15 hours under classification three; 16¾ hours under classification four; and 26½ hours under classification five; or a total of 246½ hours, at $10 per hour, or $2,465. The balance due from applicants will be $158.51. Let order be settled and submitted accordingly by the Trustee.