**OKLAHOMA RY. CO. v. JOHNSTON et al.**

**In re OKLAHOMA RY. CO.**

No. 3267.

Circuit Court of Appeals, Tenth Circuit.

March 28, 1946.

Rehearing Denied April 27, 1946.

Luther Bohanan, of Oklahoma City, Okl. (Bohanan & Adams, of Oklahoma City, Okl., of counsel), for appellant.

Robert M. Rainey, of Oklahoma City, Okl. (Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., of counsel), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This appeal presents for review an order entered in a corporate reorganization proceeding under Chapter X of the Bankruptcy Act, as amended, 52 Stat. 840, 883, 11 U.S.C.A. § 501 et seq., allowing compensation for services rendered by the disinterested trustee and his attorney. Pursuant to section 250 of the Act, as amended, 11 U.S.C.A. § 650, the appeal was allowed by this court and is summarily heard upon the original papers. Dickinson Industrial Site, Inc. v. Cowan, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819.

Oklahoma Railway Company operated a street railway system in Oklahoma City, and it also operated electric interurban railway lines radiating from Oklahoma City to El Reno, to Guthrie, and to Norman, all in Oklahoma. The company filed its petition under Chapter X, supra, and was adjudged a bankrupt. Hubert R. Hudson was appointed operating trustee, Robert K. Johnston was appointed disinterested trustee, and the compensation of each was fixed at $500 per month. Richardson, Shartel, Cochran and Pruet, the general attorneys for the company, were continued as attorneys for the operating trustee and continued to receive $1,040 per month, the amount previously paid them as attorneys for the company. Streeter B. Flynn was appointed attorney for the disinterested trustee and his compensation was fixed at $500 per month. Hudson died after serving as operating trustee for about six months, and for more than three years thereafter Johnston acted as sole trustee. Then A. C. DeBolt was appointed operating trustee and his compensation was fixed at $750 per month. The sums thus fixed were partial allowances, subject to additional allowances in the discretion of the court. The proceeding was pending in the court for more than six years, and during that time an interim lump-sum allowance was made to Johnston and Flynn each in the sum of $6,000. At the end of that period the property was turned back to the company and the proceeding was terminated, except that the court retained jurisdiction for certain minor purposes. Just before entering the order returning the property and terminating the proceeding, the court allowed De-Bolt $10,000 in addition to $19,500 paid him, making a total of $29,500; allowed Johnston $25,000 in addition to $42,500 previously paid him, making a total of $67,500; allowed Richardson, Shartel, Cochran and Pruet $25,000 in addition to $75,159.76 previously paid them, making a total of $100,-159.76; and allowed Flynn $25,000 in addition to $41,900 previously paid him, making a total of $66,900. The owners of more than 99 per cent of the common stock of the company appealed from the order in its entirety on the ground that the several additional allowances were excessive in amount; but now only the allowances made to Johnston and Flynn are challenged.

At the hearing on the several applications for additional allowances, extended statements were made under oath respecting the nature, extent, and scope of the services rendered. The attorney for the Securities and Exchange Commission who had participated actively in the proceeding reviewed the pertinent facts and stated that the Commission had authorized him to advise the court that it had no objection to the amounts requested (and allowed), and further that the Commission considered such amounts as being on the moderate side. And the court filed a carefully prepared memorandum outlining the facts on which the allowances were predicated. We shall not undertake to review in detail the services rendered by the trustees and their attorneys. A resume of the major matters to which time and effort were devoted will suffice. The court directed the disinterested trustee to investigate the claims filed. An exhaustive examination was made of the records of the company from its inception. The examination consumed a period of almost six months. The trustee and his attorney devoted most of their time to it. The investigation disclosed a possible cause of action against the holders of income mortgage bonds issued by the company for certain payments of interest. The attorney for the disinterested trustee made trips to St. Louis, Philadelphia, New York, Omaha, and Lincoln. After prolonged negotiations, the claim was compromised with the result that approximately $90,000 was brought into the estate. The company transported freight as well as passengers. The freight

business had been profitable; but, due to the loss of its principal outlet or gate-way, it became worthless to the company. The independent trustee undertook to make a sale of the business. Negotiations were commenced with one major railroad company. Another like company became interested. The negotiations extended over a two-year period. The attorney for the independent trustee made ten or fifteen trips to Topeka, Kansas, and Chicago, Illinois, one of which consumed two weeks' time. A price in excess of $500,000 was finally agreed upon, and it was then necessary to obtain the approval of the Interstate Commerce Commission. In addition, it was necessary to effect a settlement with individual employees who faced displacement as the result of the sale. All of that was accomplished, and the sale was consummated. Much time was devoted to resisting a proceeding before the Corporation Commission of the state having for its purpose a reduction in the company's fares for city transportation. The existing fares were ten cents for one ride and fifteen cents for two. The proposed reduction was to five cents for a single ride. After lengthy negotiations, the parties agreed upon a schedule of ten cents for a single ride, or four rides for twenty-five cents. Approximately six months was devoted to that controversy. A nationally known auditing firm was employed to make a survey and determine whether a plan of operation could be adopted which would effectuate reductions in taxes. The trustees and their attorneys devoted much time and effort to consulting and otherwise cooperating with the firm in that behalf. Abandonment of certain property, declaring certain property obsolete, and charge-offs were considered. Difficulties were anticipated. One of the attorneys for the operating trustee made a trip to Washington for consultation with the Commissioner of Internal Revenue. The Commissioner permitted certain charge-offs and substantial savings were effected. The street cars and much of the trackage of the company were in bad condition. The necessity for transforming the system from street cars to modern buses was apparent. One hundred and fifteen buses were purchased at a cost of more than $1,200,000. The buses were paid for in cash and no money was borrowed to meet the purchases. Plans of reorganization were prepared, and the trustees and their attorneys made a trip to Washington for consulations with the Securities and Exchange Commission. No plan was adopted, but a great deal of time and effort were directed to the matter. The first mortgage bonds of the company, together with interest, exceeding $3,000,000 were paid in full; the entire outstanding income mortgage bonds were settled and discharged on the basis of eighty-five cents on the dollar; and all obligations incurred by the trustees for new equipment and operating expenses were paid. The trustees received more than $23,000,000, and disbursed slightly less. The total compensation allowed the trustees and their attorneys was slightly in excess of one per cent of the cash actually handled by the trustees.

Section 241 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 641, authorizes the judge of the bankruptcy court to allow reasonable compensation for trustees and their attorneys. The statute commits to the courts sound discretion the fixing and allowance of fees and compensation. The discretion is to be exercised with sound judgment for the two-fold purpose of doing justice to the bankrupt and of rewarding with reasonable compensation those who render necessary service. In the exercise of its discretion, the court should exert care to see that the proceeding is not diverted into one for the benefit of persons claiming compensation for services rendered, to the disregard and detriment of the bankrupt. Sullivan & Cromwell v. Colorado Fuel & Iron Co., 10 Cir., 96 F.2d 219.

But trustees and attorneys appointed by the court are entitled to fair and reasonable compensation for the services actually rendered. Woods, Court Trustee, v. City National Bank & Trust Co. of Chicago, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820. And among other factors to be taken into consideration in the fixing of compensation are the extent and nature of the services, the time and labor involved, the character and importance of the matter in hand, the value of the property or the

amount of money involved, the learning, skill and experience exercised, the results accomplished, and the ability to pay. In re Detroit International Bridge Co., 6 Cir., 111 F.2d 235. And where the court has exercised its judgment in respect of allowances of this kind, its action should not be disturbed on appeal in the absence of an abuse of discretion. Dickinson Industrial Site, Inc. v. Crowan, supra; Sullivan & Cromwell v. Colorado Fuel & Iron Co., supra.

█ Upon a careful review of the record in the light of these well established principles, and taking into consideration the familiarity of the trial court with the nature and extent of the services rendered, we fail to find warrant for the contention that the allowances in question constituted an abuse of discretion.

Affirmed.